We move to the second case this morning, Spangler v. Perales. Ms. Fell? Thank you. May it please the Court, my name is Renee Fell and I represent the plaintiff's appellants Timothy Spangler and Anthony Robinson in this matter. The plaintiff's brought claims in the District Court under Title VII in Section 1981 against the defendants in this matter. It is our position that the District Court improperly dismissed Mr. Robinson's racial harassment claim and Mr. Spangler's retaliation claim at summary judgment. For Mr. Spangler's retaliation claim, in order to establish a prima facie case of retaliation under the direct method, an employee must show at summary judgment that he engaged in protected activity, the defendants committed an adverse employment action against him, and a causal nexus exists between the protected activity and the adverse employment action. The relevant facts in this matter are on March 14, 2012, Officer Robinson submitted a union grievance and complained to the UIC Office of Access and Equity regarding a supervisor's use of a racial slur toward him. Less than a week later, on March 22, Lt. Perales called Sgt. Spangler into his office and encouraged Mr. Spangler to begin to engage in retaliatory actions toward Officer Robinson, including following him, keeping an eye on him to get any information that he could, and to use a heightened scrutiny toward Officer Robinson's actions. When Mr. Spangler refused to engage in retaliatory conduct toward Officer Robinson, eventually a couple months later in July 2012, he was removed from the watch commander position in favor of Sgt. Todd Edwards, who was measurably less qualified than Mr. Spangler. At the summary judgment, the District Court did not consider testimony from Mr. Spangler that Lt. Perales had informed him that he made the decision to demote him from the third watch commander position. This statement should have been considered by the District Court. The District Court decided not to consider this statement because it would have been a violation of the federal rule of evidence 801-D-2A, since it was a statement made by a party and the statement was offered against that party, Mr. Perales. I'd like to ask you this. Where in the record will we find that Spangler preserved the Catspaw theory about Perales' involvement in his removal from the watch commander position? I saw that you raised it briefly in footnote 7 on page 9 of Spangler's response to the defendant's motion for summary judgment. Is it addressed anywhere else? Not to my knowledge, Your Honor. I think that that was the placement in the brief that it was mentioned at summary judgment or was raised. I thought your theory was just this was Perales' decision. Yes, that was. What we're arguing is that in the alternative, it's the... Yes. Okay. That's correct. Your Honor, our position is that if this court is not willing to accept the statement by Mr. Perales, in the alternative, this court should find that Mr. Perales influenced commander Capitelli's decision if it was, in fact, commander Capitelli's decision, and I think that that's an issue for the jury to decide. But if it was that he influenced commander Capitelli's decision, which brings into play the Catspaw theory. Right. Thank you. You're welcome. The admission by Perales is also imputed to the board pursuant to federal rule of evidence 801D2D, and that says, a statement is not hearsay if it is offered against a party and is a statement by his agent or servant concerning a matter within the scope of his agency or employment. In this case, Perales was acting within the scope of his employment because he was in a supervisory role, and he told Spangler that it was his decision to remove him from the third watch commander post. So in this instance, this is also an admission by a party opponent. Apparently, the defendants have conceded this point because they did not mention it in their brief. They did address the argument surrounding commander Capitelli and argued that there was no evidence that commander Capitelli was aware that Spangler had engaged in protected activity, but they did not address the statement by Mr. Perales. I'd like to ask you a question relating, well, all right, why is it not possible for a jury to conclude that although a supervisor engaged in retaliation, the employer did what it could to alleviate the problem in good faith and should not be held separately liable? That's, of course, the holding of Burlington Industries versus Eller. Did you request jury instructions regarding employer liability for supervisor conduct? Did we request jury instructions regarding supervisor conduct? Yeah, employer liability for supervisor conduct. I do not believe that we did request specific jury instructions on that issue, Your Honor. But at the same time, the jury verdicts were inconsistent. There were two claims that went to the jury. There was the claim for retaliation against the board, and there was the claim for retaliation against Mr. Perales that went to the jury. As you know, the jury found for the board and against Mr. Perales, which is inconsistent, because the elements for a Title VII retaliation claim and a Section 1981 retaliation claim are substantially similar. And so the finding in favor of the board and against Perales is inconsistent. Didn't the jury ask that question, and you all agreed that the judge should answer yes, that they could split on those issues? During the trial? During the jury deliberation. Yes, that's correct. At the time, we did say that that was fine. And so how is that a reversible error? I think in hindsight, the jury was confused by the issue, and the question that they made during jury deliberations confirms that they were confused about this issue. And so their finding was inconsistent because... Counsel, let me ask it again. Why is this a reversible error when you all agreed to the instructions and to the response to the jury's question in deliberations? I think it's a reversible error because there's inconsistent verdicts, and when there are verdicts that are... The precise question the jury was asking was, could we provide these, what you're now calling, inconsistent verdicts? And with your blessing, the judge said yes. Why should we have a new trial? I think that we should have a new trial because after the jury rendered their verdicts, it was clear that they were confused by this issue and the inconsistent verdicts support this. The elements of both of these claims are similar. Can you point us to any cases where we have reversed the judgment based on instructions that the appellant approved in a response to a jury question that the appellant also approved? I cannot, Your Honor. Neither can I. I wouldn't believe you could. I mean, you just waived it in effect. The district court pointed out, as I recall, that liability against the board would not change Robertson's recovery because the jury did not believe that Robertson suffered anything other than nominal damages. Do you want to respond to that point? Yes, Your Honor. It's our position that the special jury verdict form was confusing to the jury and suggestive because of the language in the verdict form which said that if the jury found that there was no monetary damages that they award $1, I think that that language was suggestive and it allowed the jury who may have found calculating Mr. Robinson's emotional distress and mental language damages to be complex considering that there were no medical bills, just testimony from his witnesses. I believe that it gave them an easy alternative to working together to try and come up with an amount for emotional distress damages and mental anguish damages, and the suggestive language allowed them to take the easier alternative and just award $1 in this case. You know, when the court said it was going to use the defendant's verdict forms, the court appears from the record to have immediately asked anything further anyone wants to put on the record. Why wasn't that an adequate opportunity for the plaintiff to object to the verdict form? I believe that the plaintiff thought that there would be an additional alternative to put their objections on the record and it wasn't clear that this was the opportunity to make that objection. My God, if that's not the opportunity, there will never be one. Was the jury instructed that it could award damages for emotional distress, loss of enjoyment of life, and the other things that the plaintiff listed on his version of the verdict form? The jury was instructed that they could award emotional distress damages as well as punitive damages in the closing argument, but the jury was not instructed to provide a specific amount. They were told that that was not up to counsel, that that was up to the jury to determine an appropriate amount for those particular damages. Was there any evidence put on with regard to those? Was any evidence put on with regard to those types of damages? Yes. Mr. Robinson had two witnesses. He had a fellow officer testify as to his emotional distress and how Lt. Perales' conduct had affected him emotionally. Mr. Robinson also had his ex-girlfriend as a witness and she also testified how the retaliation had affected him emotionally. So that testimony provided the jury with information as to how it affected Mr. Robinson emotionally. But then the jury determined not to award those types of damages, right? It's our position that the jury was confused by the special verdict form and considered the instruction... But we get, I mean, we're going circular. We're getting back to why didn't you object to the jury verdict form? I think that at the time it wasn't clear that the jury instruction form would be confusing to the jury and counsel thought that there would be an opportunity to make an objection to the special verdict form and that opportunity never arose. Why would you assume there would be another opportunity? I think, I don't have the record in front of me, but I think at the time that the jury instructions were read there were other things going on in the courtroom and so counsel thought that there would be an opportunity to make objections before the jury was called. No record was made with regard to that though. That's correct. So what we have before us is a consent to the verdict form that was submitted to the jury. And no objection? Your Honor, I still think that where there's a situation where there's clear error and the jury did ever in this world be clear error, if you were asked anything further regarding the jury and you said no, that everything was fine, I mean, please don't argue this. It harms your case. If there are no further questions, I would like to reserve the remainder of my time. You have five minutes left. Okay, thank you. May it please the Court, good morning. My name is Tim Wolfe. I represent the appellees and cross-appellant Al Perales in this matter. I'm going to start you right off with something very, very bothersome in this case. The district court twice misquoted the standard for hostile environment claims, saying that the conduct had to be severe and pervasive. That is not the standard. It has to be only severe or pervasive. Why shouldn't we send that claim back for the court to consider the evidence under the correct standard? The court appears to have also failed to consider other evidence of hostile environment claims. I see big problems here. Judge Rovner, let me address both of those issues for you. First, with regard to the standard that was applied by the district court, I would suggest that this is a Scrivener's error. In our summary judgment brief, we argued on the basis of severe or pervasive, which your Honor correctly notes is the standard to be applied. When one looks at the Lucky v. Ameritech case that was quoted by the district court, Lucky does not apply a severe and pervasive standard. It applies a severe or pervasive standard, and all of the other case authority that was cited by the district court, including Ellis, Seros, and Smith, all apply the correct standard. Additionally, when we look at what the court actually did with regard to the analysis, there was no indication that Officer Robinson was put to an undue burden, suggesting that he had to produce evidence above and beyond that which would be required. Here, it's also, with regard to your second question, very important to note what was argued in the plaintiff's summary judgment briefs, as opposed to what they argue in their appellate briefs. In the summary judgment brief, the only argument with respect to hostile work environment were the two comments. That is the entirety of the argument on the summary judgment briefing with respect to what constituted the hostile work environment. Everything else that's been added in now was not argued at summary judgment. The following and so forth? Exactly. Those were all attributed to alleged retaliation, Your Honor, with regard to the hostile work environment claim that Officer Robinson asserted. The entire argument was based on the two comments that were attributed to Lieutenant Borales. Moreover, Your Honor, when you look at the standard here, it's important to note that there is an absolute admission by the plaintiff that the underlying comments had absolutely no impact on his ability to do his job, which was ultimately where the district court looked at in terms of granting the summary judgment here. Officer Robinson had repeatedly indicated that he was the best officer in the department, that his performance grew better each and every day. His own brief indicates that he was an exceptional officer during this time period. The theory, counsel, seems to be that a strong victim doesn't have a claim. No, Your Honor. Has to put up with the vilest racial epithet in our culture. I would say not, Your Honor. What I would say is that where there is no impact on the individual's ability to do their job, which has been repeated by this court numerous times, as the key indicator, then you do not have a hostile work environment. Does additional stress from the fact that your commander uses this language at you count, even if you're able to resist some of the damage that might be inflicted on a weaker that mere stress in the workplace is not enough to satisfy... Stress in response to this language? What happens here is we have an individual who indicated in his grievance that he was taken aback by the conduct, by the staff, and the university immediately took actions to protect him. It removed Lieutenant Perales from his chain of command. He testified that he had very little interaction with Lieutenant Perales to begin with because of their difference in rank. Lieutenant Hersey was put in his stead. He acknowledged that there were no issues or problems between the time that he reported the conduct in March of 2012 until September of 2012, and then the issues were alleged retaliation. There were no further comments that were made. Officer Robinson testified that there were no other slurs that were ever made or heard or any actions that he attributed to his rank. Here we have... Yes, Your Honor. Does the record reveal why it was designed, albeit poorly designed, to convince Robinson that he, Perales, is not racist? I mean, had Perales done or said something that led to his need to clear himself? This whole incident is so odd. And Perales chose his words so poorly. I'm wondering if the record will reveal why in the world he would be telling him that crazy story to begin with. The record does, in fact, explain that, Your Honor. What had happened was in January of 2012, Officer Robinson appeared at a roll call. During that roll call, he was not shaven in accordance with grooming policies of the police department. Lieutenant Perales inquired about why he had not shaven. Officer Robinson... That's not the story I'm talking about. I'm talking about the first story. Well, that was it, Your Honor. And let me get to that. In response to the inquiry about the shaving, Lieutenant Perales had heard through the grapevine that Officer Robinson believed that the inquiry had been made because of his race. And Lieutenant Perales went to him to assure him that it wasn't an inquiry that was due to race, indicated that he had faced racism himself as a Hispanic officer, and shared the story about racist officers who he had objected to, albeit in an indelicate manner. He was trying to... Well, then why did he say about the shaving whenever, who knows when, that's the N in you? That was the comment that was alleged to have been made in March of 2012. And that was an entirely different context. Lieutenant Perales had indicated that that statement was not made. We assume that it was made for purposes of the summary judgment argument. And here again, we have a situation where the individual indicated that it had no impact on his ability to do his work. And that is the standard that the court is applying. I mean, I could not agree with my brother Hamilton more. Just because someone is strong enough to withstand such scurrilous talk and behavior, you know, if we went along with your theory, those people, the strong people could never hope to win a case. Well, the suggestion here is that that is the standard that has been applied by our Supreme Court and by this court. And here, the university took prompt remedial efforts in order to immediately take care of this issue with regard to the alleged racial harassment. There was the comment, and then they acted promptly. And they took care of that issue very well. There was a 20-day suspension. That's correct. And the other steps you described. Is it possible, Mr. Wolfe, remind me whether this issue of the Elearth affirmative defense was raised in the summary judgment briefing? It was, Your Honor. We had pointed all of these facts out to the court with respect to the actions that the university had promptly taken to deal with this situation and to protect Officer Robinson in the workplace. If he had substituted the word black for the n-word in discussing the shaving thing, that was a fairly innocuous comment. It would have been. Correct. We don't countenance the word choice. The comment itself was not harassing. I would agree with that, Your Honor. And under these circumstances, what we have is an inappropriate comment that was dealt with immediately and promptly by the university. And after that, there were no indications at any point of any conduct or comments or statements that were racial in their nature. I know that you may think Pirellis was punished. I myself think he was rewarded. He was moved to another division. The other division is internal affairs, where Pirellis had the chance to review complaints made against supervisors like himself who committed harassment. So I don't know where you think, you know, boy, that was a questionable placement at the least. Your Honor, because time is short, I'd like to ask you something. How is Spangler's testimony that Pirellis admitted that he demoted Spangler hearsay? Why wouldn't Rule 801D2 apply? Your Honor, we never argued that it was hearsay. And even putting aside that issue, I don't think that there's a material question of fact here. That was an issue that the District Court had found with regard to that particular statement. The undisputed evidence on the selection here with regard to this matter is that Commander Capitelli, who was in charge of their field services division, was the individual who selects people for that position. You say that's undisputed, but why isn't Spangler's testimony about what Pirellis told him evidence to dispute that? Let me explain that, Your Honor. If you look carefully at the statement of facts that was submitted under Rule 56, there are numerous places where Spangler acknowledges that Capitelli is the person who makes these decisions. He indicated that Capitelli made the decision in 2008. He indicated that Capitelli made these decisions in 2011. He had made a race claim, which he has since abandoned with regard to that same decision. And in his additional statement of facts, he said, when Capitelli made this decision. So he doesn't even believe that. What had occurred is you're looking at a paramilitary organization in a police department. It's got a command structure. When somebody at the top makes a decision, those below them are expected to follow that. Here, what happened was that when Capitelli made this decision, Pirellis adopted it. His boss made the decision. It became his decision, too. He didn't want to pass the buck on an unpopular decision to Spangler and told him that it's his decision. But I think that we need to go further than that. That sounds a lot like a jury argument, I've got to say. I would say not, Your Honor, and here's why. Because there's a critical failure of proof that exists with regard to the remainder of Sergeant Spangler's retaliation claim. If you got that, all that you would have was that a decision was made. And even if one were to assume that it was Pirellis's decision, no evidence was offered at summary whatsoever. The undisputed evidence was that in December of 2011, some four months prior to any protected conduct, that Lieutenant Pirellis had advocated to Commander Capitelli removing Sergeant Spangler from this position because he didn't think that he was doing a particularly effective job as his officers were running amok. He had made that recommendation. Capitelli rejected it at that time because he only had two other potential people he could put into that role. And the people that he could put into that role were a brand new sergeant and somebody who was going through a very difficult family divorce. So he continued to use Spangler in that position, even though he wasn't enthused about doing so. There was no evidence that was put forth that there weren't concerns about how Sergeant Spangler was actually doing his job. He had his officers congregating. He had his officers missing court. He had his officers not in uniform. He had his officers not following policy. And this was the reason why a very well credentialed Sergeant Edwards, who had already been a watch commander, was undisputed. Sergeant Spangler does not contest the credentials of Sergeant Edwards. They both ended up on the same watch as a result of the labor agreement shift picking responsibilities. And you had two people who had been the watch commanders in the prior period, and Capitelli thought that Edwards was better. And there was no evidence to suggest that the decision had any causal connection to the alleged protected conduct. So even if one did think that Lieutenant Perales had made the decision, there's still a critical failure on the causation element. Mr. Wolf, could I ask you to address your cross appeal on the at least nominal damages judgment against Mr. Perales? Yes, Your Honor. In particular, the jury, would you agree, was properly instructed on the standard to apply for materially adverse employment action for retaliation claims? I would agree with that. And the jury had the whole picture in front of it. If I recall correctly, Judge Leinenweber, in dealing with this question, said, in response to your motion, said, look, the evidence here shows that regardless of the particular methods that Perales used, there was evidence that his response to Mr. Robinson's grievance and complaint was to try to end his career. And that seems sufficiently severe to intimidate a reasonable employee. What's unreasonable about that analysis? The part that's unreasonable about that is that nothing happened to Officer Robinson. The notion that he was trying to end his career is simply not corroborated by any evidence whatsoever. What about Spangler's testimony? What about Spangler's testimony? Spangler's testimony was he was told to watch these individuals. He also testified that he wasn't told to watch them or to write them up for something that they didn't do. The evidence was that neither one of them ever got written up. Robinson never was written up for anything, didn't suffer any discipline, didn't have any discipline at all. He's still employed gainfully there today. So that combined with the many protections that you have in a civil service position with the state of Illinois made it very clear that there was nothing Lieutenant Perales who had no disciplinary ability, he couldn't discipline anybody, that he couldn't do anything to him. Was Spangler told to quote, quote, I don't want to use the word, it's an s-word. On Robinson and Pawlik and write them up and not to give Robinson and Pawlik anything they asked for. Such as time off or special assignment. That was Sgt. Spangler's testimony. Both Lt. Perales and Lt. Hersey who were present in the room say that that was not at all said. What was being done at that point was to advise Sgt. Spangler about the fact that Lt. Perales was being taken out of the chain of command and that he needed to watch his people. He needed to take care and make sure that they were doing their job. Remember, just the week before that, a whole group of officers were caught congregating in a restaurant instead of protecting campus. Officer Robinson had missed two court calls. He was being told, Lt. Perales is out of the picture. It's your job now to make sure that your officers are doing what they should. I'm running short on time and there is one point that I wish to address Judge Rovner. I think this is a very important point. The evidence was clear at trial that Lt. Perales did not get put into Internal Affairs. That's not at all. That was the plaintiff's position. There was no evidence to that whatsoever. He was moved to the Protective Services Division. The Protective Services Division does far more than deal with Internal Affairs. He did not do any Internal Affairs work. He didn't supervise anybody. He worked on training audits and policy audits. The testimony from the Chief of Police was clear. He did no Internal Affairs. The testimony from the Commander of Protective Services was clear. Perales did no Internal Affairs. Nobody could point to any Internal Affairs work that he did and that's because he did not. He was put on a desk job where he was auditing policies and training materials. He was not doing Internal Affairs. Are you saying that the brief slide about that? Is that what you're saying? I'm saying that there was no evidence presented at trial to suggest that Lt. Perales ever did any Internal Affairs. Where will we find this? We have the two of you saying two different things. I think it's throughout the trial testimony. It's in Chief Richardson's trial testimony. The only witness that they offered was a police officer who had no direct knowledge who said that there was a memo indicating that he was being put in Internal Affairs. They never presented it. When we presented the email addressing the issue, it showed that he was in Protective Services, not Internal Affairs. Thank you. Well, thank you for that. Thank you. A couple of points. The first one should be was he in Internal Affairs? Was he sent there? Your Honor, that was Officer Robinson's belief. In our brief, we mentioned that he was reassigned to Internal Affairs Lieutenant in UIC's Protective Services Division. This was from Lt. Perales's deposition. Robinson's belief that Perales was reassigned to a division that handled Internal Affairs certainly would have dissuaded him from engaging in further protective conduct. In fact, we mentioned in our summary judgment briefs that Mr. Robinson continued to feel retaliated against by Lt. Perales, but felt that further Perales's new role. But he was mistaken about his new role? I'm not certain about that, Your Honor. The testimony is that he was placed in Protective Services and Protective Services covers Internal Affairs, so it's possible that Lt. Perales would have had access to Internal Affairs and may have... So there was no evidence specifically as to what he did? I believe that Lt. Perales acknowledged in his deposition that within this division Internal Affairs investigators handle complaints of UIC employees against other UIC PD employees. Well, his job though, was there any evidence of what he did? I'm not certain, Your Honor. Counsel, could I ask you to address the Spangler retaliation claim? I understood Defense Counsel to be acknowledging that Spangler's testimony about what Perales told him is admissible. But we were told, but you still don't have evidence of causation of harm for Spangler. What do you have in the summary judgment briefing? We cited Mr. Spangler's deposition testimony where he was asked a question, You don't know how the selection was made? He answered, Oh, I do. They said, Were you there? Answer, No. So you don't know who actually made the decision? He said, Lt. Perales told me it was his decision. I understand that comes in, but I thought the argument that I thought I heard from the Defense Counsel was that even with that testimony, you don't have a causation link between a retaliatory motive and any adverse action taken against Spangler. Your Honor, it's our position that Mr. Spangler was told by Mr. Perales that he Mr. Perales made the decision to demote him. He was demoted and officers or Mr. Spangler reasonably believed that Lt. Perales did in fact demote him from his third watch commander position because he wasn't a supervisory role. He did advise Commander Capitelli. So he reasonably did believe that it's not a question of reasonable belief. It's what a reasonable jury could find on the evidence in the summary judgment record. What is there? Your Honor, I believe that a reasonable jury could find that Lt. Perales did demote Mr. Spangler. Mr. Spangler testified that he was told by... You're missing my question. I'm acknowledging the possibility that it was Perales' decision. Yes. Okay. The question is and I understand why Spangler under the circumstances might be pretty suspicious about the reasons for that. What evidence would support a finding by a jury that the motive was in fact retaliatory? The evidence that it was in fact retaliatory is that Lt. Perales asked Mr. Spangler to go out and follow Officer Robinson and get information on him that they could use to punish Officer Robinson. Mr. Spangler refused and shortly after that this occurred in March of 2012 when he was asked to go and find information that they could use against Officer Robinson and Mr. Spangler was removed from the third watch commander position in July of 2012. So a matter of a couple months. So you're relying primarily on timing. Yes. Thank you. Your Honor, I believe my time is up. If there are no further questions, I respectfully request that this court reverse the lower court's grant of summary judgment. Thank you. Thanks to both counsel and the jury.